UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X     <u>For Online Publication Only</u>
CHRISTINE PANZELLA,

                Plaintiff,

         v.                                       **<u>MEMORANDUM AND ORDER</u>**
                                                          13–CV–5640 (JMA) (SIL)
COUNTY OF NASSAU; NASSAU COUNTY
SHERIFF'S DEPARTMENT; MICHAEL J.
SPOSATO, individually and in his official
capacity; ROBERT MASTROPIERI, individually
and in his official capacity; UNKNOWN SHERIFF
#1, with Shield #116; and UNKNOWN SHERIFFS
#2 through 4.

              Defendants.
-------------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Before the Court are the parties' cross-motions for summary judgment regarding plaintiff

Christine Panzella's claims for: (1) violations of the Second and Fourteenth Amendments to the

United States Constitution under 42 U.S.C. § 1983; (2) punitive damages; (3) legal fees under 42

U.S.C. § 1988(b); (4) conversion; and (5) replevin. Defendants Michael J. Sposato ("Sposato")

and Robert Mastropieri ("Mastropieri") (collectively, the "Individual Defendants") also assert

that they are entitled to judicial or qualified immunity for plaintiff's monetary claims under

§ 1983.

      In this case, a New York State Family Court issued temporary orders of protection

against plaintiff pursuant to Article 8 of the New York Family Court Act. In connection with

those orders, the Nassau County Sheriff's Department seized longarms owned by plaintiff and

refused to return the longarms to her after the orders expired.[1]  The primary question before the Court is whether, after the orders expired, the Fourteenth Amendment required the Nassau County Sheriff's Department to provide plaintiff with a hearing concerning the department's continued retention of plaintiff's longarms.[2]  Longarms pose a unique legal issue because, unlike other firearms, "there is no license requirement for the purchase or possession of longarms" in Nassau County.  Razzano v. Cnty. of Nassau, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011).

For the reasons that follow, the parties' respective motions are granted in part and denied in part.

## I.    BACKGROUND

**A.  Overview of Article 8 of the New York Family Court Act**

Before delving into the specific facts of this case, it is helpful to provide an overview of the legal framework that governs the interplay between Family Court orders of protection and firearms.[3]

Under Article 8, an individual petitioner may commence proceedings to obtain an order of protection against a family member by filing a petition in the Family Court.  N.Y. Fam. Ct.

---

[1]  Longarms "are a category of firearms with 'longer barrels' which are 'generally more effective at distances where the handgun is nearly irrelevant.'"  Dudek v. Nassau Cnty. Sheriff's Dep't, 991 F. Supp. 2d 402, 407 n.7 (E.D.N.Y. 2013) (quoting Nicholas J. Johnson, Supply Restrictions at the Margins of Heller & the Abortion Analogue: Stenberg Principles, Assault Weapons, & the Attitudinalist Critique, 60 Hastings L.J. 1285, 1297 n.87 (2009)).

[2]  Other than plaintiff's Second Amendment challenge, which is discussed infra, plaintiff's Fourteenth Amendment claim concerning defendants' retention of the longarms after the orders expired is the only constitutional issue that was properly presented to the Court.  Plaintiff cursorily refers to alleged violations of the Fourth Amendment and Article 1 §§ 6 and 12 of the New York State Constitution in her opening brief.  In later submissions, plaintiff references potential Fourteenth Amendment claims concerning defendants' seizure and retention of her longarms before the orders of protection expired.  These claims were either not pleaded in the complaint or were not properly raised in plaintiff's summary judgment submissions–raising new arguments or claims in footnotes, reply briefs or unsolicited post-briefing submissions is improper.  Therefore, the Court does not consider them.

 Similarly, in response to the Court's order that sought facts about defendants' policies and practices, defendants advanced several new legal arguments.  The Court does not consider these arguments since defendants raised them for the first time in response to an order seeking discrete factual information and had ample opportunity to raise these arguments in their summary judgment briefing.

[3]  Unless otherwise noted, the term "firearms" encompasses longarms.

Act §§ 812, 821.  The Family Court may then, upon a showing of good cause, issue a temporary order of protection enjoining the respondent from certain conduct.   N.Y. Fam. Ct. Act § 828(1)(a).

###### 1.  *Section 842-a*

Section 842-a of the Family Court Act ("§ 842-a") authorizes the Family Court to order a respondent to surrender all firearms and longarms in the respondent's possession in connection with either a temporary or permanent order of protection.[4]

"Although Section 842-a authorizes the Family Court to order the confiscation of . . . firearms, this provision does not authorize [the Family Court] to order their subsequent return" once an order of protection has expired or been vacated.  Dudek v. Nassau Cnty. Sheriff's Dep't, 991 F. Supp. 2d 402, 406 (E.D.N.Y. 2013); see Aloi v. Aloi ("Aloi I"), 781 N.Y.S.2d 613, 614 (N.Y. App. Div. 2d Dep't 2004) (holding that Family Court did not have jurisdiction to order the return of guns seized pursuant to a permanent order of protection that had been withdrawn by the Family Court); Blauman v. Blauman, 769 N.Y.S.2d 584, 585 (N.Y. App. Div. 2d Dep't 2003) (holding that Family Court lacked jurisdiction to order the return of weapons surrendered pursuant to prior court orders).  Courts have characterized the New York State Legislature's failure to provide the Family Court with jurisdiction to determine whether firearms seized pursuant to that court's order of protection can be returned to the respondent as a legislative "glitch."  See e.g., Aloi v. Nassau Cnty. Sheriff's Dep't ("Aloi II"), 800 N.Y.S. 2d 873 (Sup. Ct. Nassau Cnty. 2005).

Some courts have indicated that the "remedy" for individuals seeking the return of their firearms after an order of protection has expired or been vacated "is to make an application to the

---

[4] If the Family Court issues an ex parte temporary order of protection directing a respondent to surrender firearms or longarms, the Family Court "shall commence [a] hearing [regarding any ex parte surrender order] within fourteen days of the date such order was issued."  N.Y. Fam. Ct. Act § 842-a(7).

officer that currently has custody of the weapons." Blauman, 769 N.Y.S.2d at 585; see Dudek, 991 F. Supp. 2d at 411.  These decisions suggest that such an officer has authority to return a respondent's firearms.  Id.  However, at least one court has recognized that "it can reasonably be anticipated that the officer that has custody of the firearms will refuse to return the firearms without a court order."  Aloi II, 800 N.Y.S.2d at 874.  In those cases, an individual must commence an Article 78 proceeding seeking an order directing the custodian of the firearms to return them.  See e.g., id.

**2.  *The Family Court's Temporary Order of Protection Form***

The Family Court uses a general temporary order of protection form that contains various conditions the court may impose upon a respondent.  See Form GF-5, Temporary Order of Protection (Family Court) ("Temporary Order of Protection Form"), available at https://www.nycourts.gov/forms/familycourt/domesticviolence.shtml (last visited Aug. 24, 2015).  For instance, the court may order that the respondent:

> Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against [the petitioning party and/or members of the petitioning party's family]. . . .

(Id. ¶ 2.)

The Temporary Order of Protection Form also covers § 842-a by including a provision in which the Family Court may require the respondent to:

> Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed . . . and . . . not obtain any further guns or other firearms.

(Id. ¶ 12.)  This section of the Temporary Order of Protection Form also indicates when and

where any such weapons must be surrendered, as required by § 842-a(5)(a).

In addition to explaining what the respondent may not do, the Temporary Order of Protection Form also explains the order's legal effect and the respondent's right to appeal.  As is relevant here, the Temporary Order of Protection Form also states:

> <u>It is a federal crime to</u> . . . buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect . . .  (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

(hereinafter "federal warning language") (emphasis in original).  Section 922(g)(8), which is relevant to the instant case, criminalizes a person's possession of firearms where, among other things, an order of protection:

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; <u>and</u>
>
> (C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . .

<u>Id.</u>

**B.  Facts**

The following facts are drawn from the parties' 56.1 statements, the declarations and exhibits referenced therein, and defendants' July 24, 2015 submission.  (July 24, 2015 Ltr. from Ralph Reissman ("Reissman Ltr."), ECF No. 77.)  These facts are undisputed unless otherwise

noted.

On June 22, 2012, plaintiff's ex-husband filed a petition for an order of protection against plaintiff.  (Pl.'s 56.1 Stmnt. ¶ 1, ECF No. 74.1; Aff. of Christine Panzella ("Panzella Aff.")" ¶ 3, ECF No. 74-3.)  That same day, a Court Attorney Referee in Family Court issued an ex parte order of protection ("Order") against plaintiff, requiring her to:

> Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats or any criminal offense against [her ex-husband] . . . .

(Panzella Aff., Ex. 1-2.)  The Order also stated that it would remain in effect until December 21, 2012.  (Id.)

Beneath the signature line of the Court Attorney Referee, the Order contains the federal warning language explaining that:

> It is a federal crime to . . . buy, possess or transfer a handgun, rifle, shotgun or other firearm while this Order remains in effect . . .  (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).[5]

(Id.)

The Family Court directed "Police Service" of the Order on plaintiff, presumably because the Order was obtained ex parte.  (Id.)

Five days later, four deputy sheriffs from the Nassau County Sheriff's Department served the Order on plaintiff.  (Defs.' 56.1 Counter Stmnt. ¶ 4, ECF No. 75; Pl.'s 56.1 Stmnt. ¶ 2.) After learning that plaintiff had firearms and longarms in her home, the deputy sheriffs

---

[5]  The accuracy of the Family Court's conclusion on this point is questionable since the Order was obtained ex parte. See 18 U.S.C. § 922(g)(8)(A) (criminalizing possession of longarms when, inter alia, an individual is subject to an order of protection that "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate").

6

confiscated, among other things, two rifles and three shotguns.[6]  (Defs.' 56.1 Counter Stmnt. ¶ 4; Panzella Aff. ¶ 17.)   One of the deputy sheriffs gave plaintiff a "Property/Firearm Receipt" listing the confiscated items.  That receipt, however, does not contain any instructions as to when or how those items might be returned to plaintiff.[7]  (Ex. 4, Panzella Aff., ECF No. 74-11.)

The two rifles and two shotguns belonging to plaintiff ("plaintiff's longarms") were brought to the Family Court Unit of the Sheriff's Department, inventoried, and transferred to the armory in the Nassau County Correctional Center.  (Def. 56.1 Stmnt. ¶ 4.)  Plaintiff's longarms remain at that facility.  (Id.)

On November 27, 2012, after a hearing at which plaintiff appeared, the Family Court extended the Order to January 22, 2013 ("Extension Order").  (Pl.'s Counter Stmnt. ¶ 24, ECF No. 75-6; Panzella Aff. ¶ 18.)  The Family Court advised plaintiff of the issuance and contents of the Extension Order, and served a copy of the Extension Order on plaintiff in court.[8]  (Panzella Aff., Ex. 5, ECF No. 74-12.)

On or around March 6, 2013, plaintiff's ex-husband withdrew his petition for an order of protection, resulting in dismissal of the order of protection proceeding.  (Pl.'s 56.1 Stmnt. ¶ 5; Panzella Aff., Ex. 1-3, ECF No. 74-7.)

On several occasions following the dismissal of her ex-husband's petition, plaintiff requested the return of her longarms.  Defendants, apparently acting on long-standing advice of counsel, have refused to return plaintiff's longarms "unless and until the Sheriff's Department is served with a court order directing the return."  (Aff. of Michael R. Golio ¶¶ 6,16, ECF No. 74-

---

[6]  Plaintiff also surrendered her pistol and pistol license, but neither is at issue in this lawsuit.
[7]  One of the shotguns belonged to another individual who resided with plaintiff.  That shotgun was later to returned to that individual without a court order.  (Pl.'s 56.1 Counter Stmnt. ¶ 26.)

[8]  Unlike the Order, the Family Court judge's signature on the Extension Order came after the language stating that it was a federal crime for plaintiff to possess a handgun, rifle, shotgun, or other firearm or ammunition.  (Panzella Aff., Ex. 5, ECF No. 74-12.)

54.)  In fact, when a temporary order of protection (which contains the federal warning language but does not expressly direct the surrender of a respondent's longarms pursuant to § 842-a) expires, the Nassau County Sheriff's Department has a policy of retaining any firearms confiscated in connection with that order until the department receives a court order directing their return ("Retention Policy").[9]  (Reissman Ltr.)  By insisting on a court order, defendants effectively require individuals in plaintiff's position to commence an Article 78 proceeding.  See generally Aloi II, 800 N.Y.S. 2d 873.

Based on the foregoing, plaintiff asserts violations of the Second and Fourteenth Amendments under 42 U.S.C. § 1983, as well as state law claims for conversion and replevin. Plaintiff seeks, among other things, declaratory and injunctive relief, and compensatory and punitive damages, on behalf of herself and all similarly situated individuals.  No class has been certified yet.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating that "no genuine issue of material fact exists."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[9]  Defendants also adhere to the Retention Policy when the Family Court expressly orders the surrender of firearms or longarms pursuant to § 842-a.

8

248 (1986)).  When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]"  Marvel Characters, 310 F.3d at 286 (citations omitted).

To defeat a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.  See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003) (citation omitted).

### III.    DISCUSSION

#### A.  Claims Against the Nassau County Sheriff's Department

As an administrative arm of Nassau County, the Nassau County Sheriff's Department is not a suable entity.  Melendez v. Nassau Cnty., No. 10–CV–2516, 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010).  Accordingly, plaintiff's claims against the Nassau County Sheriff's Department are dismissed with prejudice.

#### B.  Section 1983 Claims

Section 1983 provides a remedy for constitutional deprivations occasioned by state actors.  To maintain a § 1983 claim, the plaintiff must establish that the conduct complained of: (1) was committed by a person acting under color of state law; and (2) deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution.  See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).  When a plaintiff asserts a § 1983 claim against a municipal defendant, plaintiff must also demonstrate that the constitutional deprivation "resulted from a municipal custom or policy."  Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d

9

Cir. 1991).

**1. *Plaintiff's Fourteenth Amendment Due Process Claim***

Plaintiff argues that the Retention Policy violated her Fourteenth Amendment due process rights because defendants refused to hold a hearing regarding the return of her longarms after the Extension Order expired.

"In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011). Here, no one disputes plaintiff has an interest in her longarms and that defendants' retention of plaintiff's longarms deprived her of that interest. Moreover, defendant Nassau County (the "County") concedes that its retention of plaintiff's longarms after the expiration of the Extension Order was pursuant to the County's policy and practice.[10] Thus, the Court's analysis focuses on what process is due to plaintiff under Mathews v. Eldridge, 424 U.S. 319 (1976). Under Mathews, the Court must balance three factors:

- "First, the private interest that will be affected by the official action";
- Second, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and
- Third, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

---

[10]    Thus, if the Retention Policy violates the Fourteenth Amendment, the County will be liable under Monell v. Dep't of Social Servs. of the City of N.Y., 436 U.S. 658 (1978). Moreover, the County's concession regarding the Retention Policy makes clear that retention of plaintiff's longarms was pursuant to established state procedure. See Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.").

Mathews, 424 U.S. at 335.

In Razzano v. Cnty. of Nassau, 765 F. Supp. 2d 176, the court analyzed the Mathews factors in a somewhat analogous context. There, two County police officers confiscated, among other things, nine longarms from the plaintiff, Razzano, pursuant to a policy of doing so when the police believed a person to be dangerous. Id. at 185. However, the County had no procedure governing the return of longarms confiscated pursuant to that policy. Id. at 181.

Razzano sued the County, among others, alleging that due process under the Fourteenth Amendment required the County to provide a meaningful post-deprivation hearing concerning the return of his longarms. Id. at 181–82. The County denied committing any constitutional violation and argued that due process was satisfied by the following two post-deprivation remedies: (1) an application to the Nassau County Pistol License section seeking reinstatement of Razzano's pistol license; or (2) an Article 78 proceeding. Id. at 186.

Applying Mathews and a trio of Second Circuit due process cases commencing with McClendon v. Rosetti, 460 F.2d 111 (2d Cir. 1972),[11] the court concluded that due process required a prompt post-deprivation hearing. With respect to the first Mathews factor, both parties agreed that the plaintiff had a property interest in his longarms. Id. at 188. Turning to the second factor, the court determined that there was a significant risk of erroneous deprivation in the procedures available to plaintiff—either petitioning for reinstatement of his pistol license or commencing an Article 78 proceeding. Id. at 188–89. As is relevant here, the court concluded that an Article 78 proceeding posed "a considerable risk of erroneous deprivation" because:

> (1) an Article 78 proceeding was "likely to take a substantial amount of time";

---

[11] The other cases in the trio are Butler v. Castro, 896 F.2d 698 (2d Cir. 1990), and Alexandre v. Cortes, 140 F.3d 406 (2d Cir. 1998).

      (2) "placing the burden of going forward on the person whose property was taken is even more onerous, as it requires that such person give up not only time, but also money to initiate a lawsuit and retain an attorney"; and

      (3) there is a "risk of wrongful deprivation in requiring a lengthy process to return property even where the person whose property was taken does not appear to have a strong case."

Id.  In contrast, the post-deprivation hearing urged by Razzano would "have significant value in preventing erroneous deprivation" because it would, among other things:  (1) "provide the owner of confiscated longarms a timely and inexpensive forum to challenge the government's holding of his property"; and (2) limit unfair curtailment of an individual's Second Amendment right to bear arms.  Id. at 189–90.

      Finally, with respect to the third Mathews factor, the court concluded that the County had only a limited interest in safety given that Razzano was free to acquire new longarms and there was no evidence that requiring a post-deprivation hearing would be overly burdensome.  Id. at 190.

      Based on that analysis, the court held that persons in Razzano's circumstances were entitled to a prompt post-deprivation hearing under the following conditions:

      • First, the post-deprivation hearing must be held before a neutral decision-maker.

      • Second, consistent with the Second Circuit's rulings in the McClendon [and its progeny], the right to a prompt post-deprivation hearing only applies to seized longarms that are not (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.

      • Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action—presumably forfeiture or a cause of action seeking an order of protection, although the Court does not limit Nassau County to these theories—to maintain possession of the seized longarms.

> • Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed. If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain possession of the longarms in question.

Id. at 191.

Defendants suggest that Razzano is distinguishable because:  (1) the Family Court ordered defendants to confiscate plaintiff's longarms; and (2) unlike the officers in Razzano, defendants had no authority to return plaintiff's longarms due to the "legislative glitch" in § 842-a, which grants the Family Court authority to order the surrender of a respondent's firearms, but not their return.  See Aloi  II, 800 N.Y.S. 2d at 874–75.  Defendants' arguments are not persuasive.

The Family Court did not expressly order plaintiff to surrender (or defendants to confiscate) her longarms pursuant to § 842-a or pursuant to federal law.  Notably, the Family Court's orders did not include the explicit surrender provision found in the Temporary Order of Protection Form or otherwise invoke § 842-a.  The federal warning language found in the Order was a mere admonition, warning plaintiff that it would be a violation of federal law for her to possess firearms or longarms while the Order remained in effect.  For these reasons, the Order did not direct plaintiff to surrender her longarms—let alone bar their return once the Extension Order expired.

Given that the Family Court did not order plaintiff to surrender her longarms pursuant to

§ 842-a, the "legislative glitch" in § 842-a is not relevant here.[12]

Other than defendants' flawed attempts to distinguish Razzano, defendants do not argue that Razzano was otherwise wrongly decided.[13]   Although Razzano addressed factually distinct circumstances, the Court finds Razzano persuasive and believes that its broader logic should apply here.   Notably, other than defendants' unconvincing argument that a court order is required for release of plaintiff's longarms, defendants have not articulated any basis for retaining plaintiff's longarms.   Accordingly, the Court concludes that, upon expiration of the Extension Order, plaintiff should have been afforded a hearing consistent with the principles set forth in Razzano.  She was not.  Therefore, plaintiff's motion for summary judgment against the County on her due process claim concerning the Retention Policy is granted.   The County's motion for summary judgment on that claim is denied.   The County must hold a due process hearing consistent with the criteria set forth in Razzano within 30 days of the date of this decision.

**2.  *Immunity***

The Individual Defendants, Sposato and Mastropieri, do not dispute their involvement in the County's retention of plaintiff's longarms pursuant to the Retention Policy.   However, they contend that they are entitled to either quasi-judicial immunity or qualified immunity.   The County also appears to argue it is entitled to quasi-judicial immunity.   The Court addresses each immunity doctrine in turn.

---

[12] The County argues that, under Vives v. City of New York, 524 F.3d 346 (2d Cir. 2008), it has no Monell liability because the County was merely acting pursuant to the mandates of New York state law, i.e.,§ 842-a.  However, since the Family Court did not order plaintiff to surrender her longarms pursuant to § 842-a, the Court rejects defendants' contention.  Cf. Dudek, 991 F. Supp. 2d at 411–412 (holding that the County was not carrying out § 842-a when it refused to return longarms to the plaintiff in that case after the underlying order of protection, which expressly directed surrender, had been vacated).

[13] Although defendants indirectly suggest that they are not competent to determine whether to return one's firearms, the Court notes that the County's police department makes these very determinations in connection with Razzano hearings and pistol licensing decisions.

14

### a.  Quasi-Judicial Immunity

"[J]udges generally have absolute immunity from suits for money damages for their judicial actions."  Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009).  "Such judicial immunity is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  Id. (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)).  Quasi-judicial immunity extends to "certain others who perform functions closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985).  "Because the execution of a court order is integral to the judicial process, district courts within this Circuit have held that sheriffs executing facially valid court orders are entitled to absolute quasi-judicial immunity."  Stancati v. Cnty. of Nassau, No. 14–CV–2694, 2015 WL 1529859, at *4 (E.D.N.Y. Mar. 31, 2015).

The doctrine of quasi-judicial immunity does not apply to defendants because, as discussed earlier, the Family Court did not:  (1) direct plaintiff to surrender her longarms; or (2) direct defendants to retain plaintiff's longarms after the Family Court's orders expired.

### b.  Qualified Immunity

"Officials are sheltered from suit, under a doctrine known as qualified immunity, when their conduct 'does not violate clearly established . . . constitutional rights' a reasonable official, similarly situated, would have comprehended."  Wood v. Moss, 134 S. Ct. 2056, 2061 (2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The purpose of this doctrine is to "ensure that the persons carrying out governmental responsibilities will perform their duties boldly and energetically without having to worry that their actions, which they reasonably believed to be lawful at the time, will later subject them to liability on the basis of subsequently developed legal doctrine."  Askins v. Doe No. 1, 727 F.3d 248, 254 (2d Cir. 2013).  Qualified

15

immunity thus "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009). Qualified immunity "applies 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Spavone v. N. Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (quoting Pearson, 555 U.S. at 231). "So long as a defendant 'has an objectively reasonable belief that his actions are lawful,' he 'is entitled to qualified immunity.'" Id. (quoting Swartz v. Insogna, 704 F.3d 105, 109 (2d Cir. 2013)).

"[W]hether a defendant official's conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004). Where, as here, the parties do not dispute the factual record, it is appropriate for the court to determine whether it would be clear to a reasonable government official that the official's conduct was unlawful in the situation the official confronted. See Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) (quoting Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990)).

The Individual Defendants are entitled to qualified immunity because it would not be clear to reasonable officials that their conduct was unlawful in the circumstances of this case.

As a threshold matter, no Second Circuit or United States Supreme Court precedent squarely holds that firearms seized in connection with an order of protection must be returned at the conclusion of such proceedings. See generally Matusick v. Erie Cnty. Water Auth., 757 F.3d

16

31, 60 (2d Cir. 2014) (considering, among other things, in qualified immunity analysis "whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question").  Plaintiff cites McClendon v. Rosetti, 460 F.2d 111, Butler v. Castro, 896 F.2d 698 (2d Cir. 1990), and Alexandre v. Cortes, 140 F.3d 406 (2d Cir. 1998), which collectively establish due process rights in certain circumstances concerning the return of property seized in connection with the detection or investigation of criminal activity.[14]  Plaintiff contends that these cases clearly establish that defendants may not retain plaintiff's longarms indefinitely until plaintiff obtains a court order directing their return.

McClendon and its progeny are, however, distinguishable "in a fair way" from this case on two grounds.  See Saucier, 533 U.S. at 202–03 (noting that an individual would not be entitled to qualified immunity where "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand").

First, the McClendon line of cases do not relate to "the return of property, where a law enforcement agency's officers had confiscated the property pursuant to a prior *court order*." Dudek, 991 F. Supp. 2d at 417–18 (emphasis in original).  The distinction between property seized in connection with the detection and investigation of criminal activity, on the one hand, and property seized pursuant to a court order, on the other, is significant for purposes of qualified immunity.  See id.  In Dudek, a Family Court, acting pursuant to Section 842-a, entered a temporary order of protection that expressly directed the plaintiff to surrender his firearms to

---

[14] Plaintiff also claims that a "parade of Family Court and Article 78 decisions challenge the argument that it was 'objectively reasonable' for the Sheriff's Department to believe that they were not violating due process rights." (Pl. Opp. at 17, ECF No. 75-5.)  However, none of those cases explicitly decided any constitutional issues.  Moreover, none of those cases are from the federal Courts of Appeal or the United States Supreme Court.  Cf. Matusick, 757 F.3d at 61 (holding that a fleeting district court opinion and unpublished summary order from a circuit court of appeal was insufficient to clearly establish right at issue).

Nassau County.  Id. at 407.  After the petition for an order of protection was withdrawn, the

Family Court terminated the order of protection proceeding and vacated its earlier order.  Id.

The County, however, refused to return the plaintiff's firearms until it received a court order

directing it to do so.  Id. at 407–408, 410.  On those facts, the court in Dudek found that the

individual defendants were entitled to qualified immunity, reasoning that the fact that the

plaintiff's firearms were seized pursuant to a court order

> informs the conclusion that a "reasonable officer" in this action
> would have believed, based on [McClendon and its progeny],
> that his refusal to return [plaintiff's] longarms without a court
> order departed from "clearly established" law.  On the contrary, an
> officer could have reasonably believed that, because the Family
> Court had ordered that the longarms be confiscated, he was not
> allowed to return the longarms, until a different court with actual
> authority ordered that they be returned.  It was incorrect, but not
> unreasonable, for an officer to have believed, as Defendants do,
> that an "independent determination that [plaintiff] was entitled to
> the return of his longarms" would amount to an "impermissibl[e]
> review[ ]" of the [Family Court Order] by a law enforcement
> agency, rather than another court.  Even assuming an officer
> should have believed that he was allowed to reverse, without
> direction from another court, what the Family Court had already
> directed as far as retaining the longarms, he had no reason to
> believe that his refusal to do so would run afoul of the
> Constitution.

Id. at 417–18 (internal citation omitted).

Admittedly, this case stands on slightly different footing than Dudek because the Order

did not expressly direct the surrender of plaintiff's longarms pursuant to § 842-a.  Nevertheless,

an official could have reasonably construed the federal warning language—which explicitly

stated that it was a crime for plaintiff to possess firearms—as an implicit directive to seize any

guns in plaintiff's possession.  Moreover, the nature, scope and extent of the violent conduct

prohibited by the Order suggested that plaintiff posed a significant threat to her ex-husband, and

thus reinforced the notion that the Family Court may have ordered the confiscation or surrender

of plaintiff's longarms.  Accordingly, because reasonable officials could have believed that the Order directed a seizure or surrender of plaintiff's longarms, the Individual Defendants are entitled to qualified immunity under the reasoning in Dudek.

Second, the McClendon line of cases did not involve firearms seized in connection with an order of protection.  The Court is mindful of the Second Circuit's admonition that if a court defines a right "too narrowly based on the exact factual scenario presented, government actors will invariably receive qualified immunity."  Golodner v. Berliner, 770 F.3d 196, 206 (2d Cir. 2014).  But, the Court cannot ignore the delicate context in which plaintiff's deprivation arises. Firearms and domestic violence are far too often a deadly combination:

> This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year.  Domestic violence often escalates in severity over time, and the presence of a firearm increases the likelihood that it will escalate to homicide[.] "[A]ll too often," as one Senator noted during the debate over [18 U.S.C.] § 922(g)(9), "the only difference between a battered woman and a dead woman is the presence of a gun."

United States v. Castleman, 134 S. Ct. 1405, 1408-09 (2014) (citations and footnote omitted). Against this backdrop, when the Family Court finds it necessary to enter a temporary order of protection, such an order constitutes an acknowledgment that a volatile situation may be afoot. And, when an order of protection expires or is vacated because the petitioner has withdrawn a petition, the termination of those proceedings does not, of course, necessarily indicate that the underlying problems between the parties have been fully defused.  Given these concerns, the task of ensuring that a potentially dangerous situation no longer exists is fundamentally different than returning indisputably non-contraband property.  Moreover, where a court has previously concluded that a person posed a danger (and could not lawfully possess a longarm), it would not have been unreasonable, under applicable precedent, for defendants to believe that a court, rather

than the Sheriff's Department, was the most appropriate forum to determine the disposition of any longarms confiscated from that person.  Given these considerations, this case is distinguishable "in a fair way" from McClendon and its progeny.

In sum, the Individual Defendants are entitled to qualified immunity as to the money damages portion of plaintiff's due process claim regarding the Retention Policy.

### 3.  *Plaintiff's Second Amendment Claim*

Defendants move for summary judgment on plaintiff's Second Amendment claim.  Defendants contend that plaintiff's Second Amendment claim should be dismissed because "'the right to bear arms is not a right to hold some particular gun.'"  Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 429 (S.D.N.Y. 2013) (quoting Garcha v. City of Beacon, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005)) (internal quotation marks omitted).  Plaintiff does not dispute this authority.  Instead, relying principally on Laird v. Tatum, 408 U.S. 1 (1972), a case involving the First Amendment, plaintiff asserts that defendants' unlawful retention of longarms has a "chilling effect" on Second Amendment rights, and, in fact, misled plaintiff into believing that she could not possess "any guns at all."  (Aff. of Christine Panzella in Opp. to Defs.' Mot. for S. J., ¶¶ 51–52, ECF No. 75-4.)  Defendants respond that plaintiff's argument is speculative and anecdotal, and that, in any event, plaintiff's ignorance concerning her right to possess other longarms does not give rise to a constitutional violation.

Plaintiff does not cite any authority—let alone binding authority—recognizing the novel theory she advances.  Nor has plaintiff offered any compelling reason to do so.  Even if the Court did not have serious misgivings about applying plaintiff's "chilling effect" theory to the Second Amendment context, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  Laird, 408 U.S. at

20

13–14.  Here, plaintiff has not presented any evidence of a specific objective harm or threat of specific future harm.  For all of these reasons, the Court grants defendants' motion concerning plaintiff's Second Amendment claim.

### C.  Punitive Damages

Plaintiff's motion for summary judgment as to punitive damages under §1983 is denied. Since the Individual Defendants are entitled to qualified immunity and punitive damages may not lie against a municipality, see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), plaintiff cannot recover punitive damages under § 1983.

### D.  Legal Fees

Plaintiff is entitled to an award of reasonable fees and costs as to her due process claim concerning the Retention Policy because she has prevailed on that claim.  However, the Court defers ruling on any application for fees or costs until the conclusion of this litigation.

### E.  Plaintiff's State Law Claims

Both parties seek summary judgment on plaintiff's state law claims for conversion and replevin.  The Court denies the parties' respective motions as premature until the due process hearing ordered by the Court has been held.

### IV.   CONCLUSION

Plaintiff's motion for summary judgment as to her Fourteenth Amendment due process claim concerning the Retention Policy is granted.  The County must hold a due process hearing consistent with the criteria set forth in Razzano within 30 days of the date of this decision. Because plaintiff has prevailed on that claim, she is entitled to reasonable fees and costs as to that specific claim at the conclusion of this litigation.  Plaintiff's summary motion is denied in all other respects.

21

All claims against the Nassau County Sheriff's Department are dismissed with prejudice. Defendants Sposato and Mastropieri are entitled to qualified immunity as to plaintiff's due process claim regarding the Retention Policy. The Court grants summary judgment to defendants on plaintiff's Second Amendment claim and dismisses that claim with prejudice. Defendants' motion for summary judgment is denied in all other respects.

 **SO ORDERED.**

Dated:  August 26, 2015
Central Islip, New York

                                    /s/     JMA
                              JOAN M. AZRACK
                              UNITED STATES DISTRICT JUDGE