UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
CHRISTINE PANZELLA,

                                        Plaintiff,

                                                                Index No.: 13-CV-05640 (JMA)(SIL)

            -against-

COUNTY OF NASSAU, NASSAU COUNTY
SHERIFF'S DEPARTMENT, MICHAEL J.
SPOSATO, Individually and in his Official
Capacity, ROBERT MASTROPIERI, Individually
and in his Official Capacity, UNKNOWN
SHERIFF #1, with Shield #116 and UNKNOWN
SHERIFFS #2 through 4,

                                        Defendants.
--------------------------------------------------------------X


**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION OF**
**DEFENDANT NASSAU COUNTY'S MOTION FOR RECONSIDERATION**

**La Reddola, Lester & Associates, LLP**
*Attorneys for Plaintiff Christine Panzella*
**600 Old Country Road, Suite 224**
**Garden City, New York 11530**
**(516) 745-1951**

# TABLE OF CONTENTS

Preliminary Statement     3

Statement of Facts     9

Argument

    POINT I - DEFENDANT NASSAU COUNTY HAS INTRODUCED
NO RELEVANT "CONTROLLING DECISIONS THAT THE COURT
OVERLOOKED" THAT WOULD REASONABLY WARRANT THE
GRANTING OF THE MOTION TO REARGUE     12

        A.    "Stigma-Plus Defamation Claims" Supporting Article 78
As a Due Process Remedy Have No Relation to The Matthews
Test, The Facts of This Case or Cases Such as Canavan,
Krimstock, Razzano and Others Where The Sheriff is Simply
Ignoring Their Statutory Duty To Return Non-Contraband Property     13

    POINT II - NASSAU COUNTY'S INTEREST IN ADHERING TO
NEW YORK STATE LAW, AND IN NOT VIOLATING FAMILY
COURT ORDERS, WHILE LEGITIMATE CONCERNS, DOES
NOT OUTWEIGH THE FIRST TWO *MATHEWS* FACTORS     15

    POINT III - NO "LEGISLATIVE GLITCH" EXISTS SUCH THAT
THE FAMILY COURT HAS NO JURISDICTION TO DIRECT
THE SHERIFF TO RETURN SEIZED LONGARMS     20

Conclusion     24

## Preliminary Statement

It is axiomatic that Nassau County (the "County") and the Nassau County Police Department (hereafter "NCPD") amended their firearms return procedure after *Razzano v. County of Nassau et al.*, Civil Action No. CV-07-3983 (E.D.N.Y., February 28, 2011), such that one need not file an Article 78 proceeding in **mandamus** to initiate the return of a firearm. The NCPD regular returns non-contraband firearms under their authority under Penal Law § 400.05(6). This section states:

> A person who surrenders firearms shall have the right to arrange for the sale, or transfer, of such firearm to a duly licensed dealer in accordance with this chapter, or for the transfer of such firearm to himself or herself.

(See Penal Law § 400.05(6)).

So too, in this case, the NCPD offered Plaintiff Christine Panzella the return of her pistol license and handguns without any further court action or order directing return. (*See* Plaintiff's Motion for Summary Judgment, Exhibits 1-2 & 1-3). It is also axiomatic that the Nassau County Sheriff's Department (hereafter "Sheriff") operates under the same Penal Law §400.05(6). It is also admitted by Sgt. Golio in court that the Sheriff does not require to be ordered to return firearms under this section for the "the sale, or transfer, of such firearm" under Penal Law § 400.05(6). Michael Golio, Esq., Chief of the Legal Bureau of the Corrections Department, stated under oath before Judge Feuerstein on December 2, 2013:

> Mr. Reissman: I will ask counsel, Mike Golio, Chief of the Legal Bureau of the Corrections Department, to address the court, if that is permissible.
> (See Plaintiff's Motion for Summary Judgment, Exhibit 8, pg. 3, lines 15-17)

> The Court: How many weapons do you have stockpiled at this point that you seized under these circumstances?

> Mr. Golio: There are a large number of weapons that have been confiscated for a number of reasons.
> The Court: Since this case.

Mr. Golio: Not since this case. No your Honor. Just –

The Court: So you never gave any of them back.

Mr. Golio: Some were turned over as a result of court order out of the Supreme Court. Some were transferred under lawful transfers to another owner.

The Court: To another owner.

Mr. Golio: Not during the pendency of your Honor's order, but since the weapons were seized initially.
(See Plaintiff's Motion for Summary Judgment, Exhibit 8, pg. 4, lines 6-22).

And further,

The Court: So they are all longarms?

Mr. Golio: All longarms.

The Court: How did you decide which ones would be returned to their owners and which ones would not be returned?

Mr. Golio: If we were presented with an order form the Supreme Court directing the return of weapons, we returned the weapons. ***If the owner opted to transfer the ownership to another lawful owner, we would effectuate that transfer.***

The Court: I see.

(Emphasis added, See Plaintiff's Motion for Summary Judgment, Exhibit 8, pg. 5, lines 9-18).

Thus, the County and the Sheriff do not recognize any "legislative glitch" or need for a court order to dispose of firearms "to another owner," without a court order. This admission undercuts the County's argument on both the governmental interest and "legislative glitch" theory.

As a matter of course, the return of a pistol license and handgun would cause the Sheriff to return any rifles and shotguns if any were seized. (See Sgt. Snizek testimony dated August 26, 2008[1]).  Since the individual had now been cleared under the more stringent pistol licenses rules.

---

[1] Q (La Reddola): "If the Order would expire, why were the longarms not being returned as a matter of course as opposed to having the licensee, pistol licensee, request the return of his longarms?"

But in *Dudek v. Nassau County Sheriff's Department*, No. 12-CV-1193 (PKC), 2013 WL

6092855 (E.D.N.Y. Nov. 19, 2013) the Sheriff, argued apparently for the first time, it would no

longer accept the NCPD pistol return, and instead argued for ***a second, separate Article 78*** to be

by the County and the Sheriff.

Further, in this case, the Sheriff simply returned a firearm to Mr. George Loh without any

court order at all, by driving the weapon to the parking lot of his place of employment and telling

him to take it. (*See* Affidavit of Christine Panzella, ¶ 10). It is undisputed that Sheriffs Sposato

and Mastropieri are well aware of their duty to return non-forfeiture property under

Penal Law § 400.05(6) (See Plaintiff's Motion for Summary Judgment, Exhibit 8, pg. 4 lines 4 to

19). Given the many interactions individuals have in the Family Court system each year where

firearms are involved, and the numerous previous lawsuits against Mastropieri and Sposato over

nearly two decades, the FCA § 842-a(5) (b) return policy must be followed in full. The Family

Court Act return policy clearly states:

> (b) The prompt surrender of one or more firearms pursuant to a court order issued
> pursuant to this section shall be considered a voluntary surrender for purposes of
> subparagraph (f) of paragraph one of subdivision a of section 265.20 of the penal law.
> The disposition of any such firearm shall be in accordance with the provisions of
> subdivision six of section 400.05 of the penal law.

(See Family Court Act § 842-a(5)(b)

And Penal Law § 400.05 states:

> (6) A person who surrenders firearms shall have the right to arrange for the sale,
> or transfer, of such firearm to a duly licensed dealer in accordance with this
> chapter, or for the transfer of such firearm to himself or herself.

(See Penal Law § 400.05(6)).

---

County: "Objection."
A (Snizek): "Our procedure was to – like I said, it was parallel thing. They followed the handguns. If the situation had quieted enough where we would return the pistol license, the long guns would be [returned] also. Until such time as we determined the safety factor was ok, there – those firearms and long guns would be kept until such time as we determined there was a – it was safe to return them." (*See* DE 74-50, pg. 9 of 23, lines 9-25).

The Sheriff disposes of surrendered firearms without a court order under the first part of Penal Law § 400.05(6), state as: ***"A person who surrenders firearms shall have the right to arrange for the sale, or transfer, of such firearm to a duly licensed dealer in accordance with this chapter..."*** The Sheriff, however refuses to follow the last section without a court order, which states: ***"or for the transfer of such firearm to himself or herself."*** This is not a "legislative glitch", but rather a deliberate misinterpretation of their duty.

It is well-settled and acknowledged by this Court that no license is required in Nassau County or elsewhere in New York State to purchase or own longarms. It is also clear that Nassau County and the Nassau County Sheriff do not require a court order to dispose of firearms, but only to return them directly to their rightful owner directly. (See DE 95). Mr. Jonel Almazon, who had previously filed a Motion for Return of Property and Opt Out of Class Action Suit, has further stated that Detective Mastropieri informed him that he "did not need to file an Article 78 in order to have his property returned to him" (*See* DE 32 & DE 95). Furthermore, according to Jonel Almazon, Detective Mastropieri informed Mr. Almazon, whose Order of Protection expired in February 2012, that "there are a lot of people in [his] situation" (*See* DE 95). Finally, it is also clear that Nassau County's handling of such cases is an aberration in New York State. (See Exhibit 12-3 Affidavit of Sheriff Paul J. VanBlarcum, DE 74-22).

This class action is required because the Nassau County Sheriff, an appointed official, simply refuses to comply with the statutory return framework to return property directly to the owner unless ordered; and will not voluntarily settle this case. This scenario can be described as loss aversion, as for decades the County has paid no price for the hardships it imposed on persons using the Family Court system. But for the person willing to offer another person to accept the weapons, with a wink and a nod the transfer is made. The policy favors either

abandoning property to the Sheriff without compensation, or lying to return property via a third party transfer. Either way, the policy needs to be changed or the Sheriff must take responsibly for property it collects.

The County offers a "reweighing argument" under *Mathews v. Eldridge*, 424 U.S. 319 (1976), claiming that the governmental interest outweighs all other concerns and considerations. In this case, however, as in *Dudek* and others, the aggrieved individuals **have already had their surrendered firearms returned by the NCPD**, or are capable of purchasing additional firearms. The governmental safety interest is clearly diminished, a fact again ignored by the County.

Finally, Defendant Nassau County has attempted to confuse the matter by offering Plaintiff Christine Panzella a return hearing upon demand, instead of returning the property it may not lawfully continue to possess, or conduct a hearing on why the County believes it can be successful in a forfeiture action in Supreme Court[2]. At no point in this case has Defendant Nassau County sought a court order to retain the longarms of Plaintiff Christine Panzella, as they must, despite several occasions following the Order of Dismissal of the Temporary Order of Protection where the Plaintiff requested the return of her longarms.

There can be no doubt that the Sheriff's Department is bound by law to follow the policies of Nassau County. Specifically, Nassau County Charter, Article XX, Section 2002 which states:

> "Except where inconsistent with this Act, the Sheriff shall have and exercise all the powers and duties now or hereafter conferred, or imposed by any law applicable to the County on the Sheriff and such other duties as may be provided by ordinance."

---

[2] Plaintiff Christine Panzella is "legally permitted to own/possess such longarms," which was the standard offered by NCPD Captain Golio in response to the court ordered second written demand for the return of the property to Ms. Panzella (*See* DE 74-26 and DE 74-27, Exhibits 14-1 and 14-2 of Plaintiff's Motion for Summary Judgment).

The Sheriff should not require an order to follow the second part of Penal Law §

400.05(6). The Sheriff's Department, which includes Michael J. Sposato and Robert Mastropieri,

are acting as policy-makers, in determining to deliberately following one part of Penal Law

400.05(6), but not the rest. This is even more outrageous given the many times they were each

sued over the years, in Family Court and Supreme Court (*See* Defendant's Memorandum of Law,

pgs. 17-19). At all relevant times, Sposato and Mastropieri were acting in a supervisory role in

relation to the return of confiscated longarms. The policy that has been implemented in Nassau

County allows the Defendant to retain all surrendered longarms unless and until the property

owner obtains a second court order compelling the Sheriff to return the property. *Razzano*

declared, however, that the Defendant's policy, which had the effect of withholding rifles and

shotguns indefinitely, imposed an undue burden on the citizens of Nassau County to sue to get a

court order to have their property returned, and was unconstitutional under the 2nd and 14th

Amendments.

Nassau County, through the Sheriff's Department, has created, continued, implemented,

preserved or maintained a policy that has been already declared to be unconstitutional. The

continued violation of the Plaintiff's rights to have her rifles and shotguns returned represents a

continuing willful and intentional violation of a fundamental right protected by the Federal and

State Constitutions under the 2nd and 14th Amendments. To date, Plaintiff Christine Panzella's

longarms have not been returned to her although demand has been properly made on several

occasions. Furthermore, Defendant Nassau County has not sought or obtained a second court

order permitting the retention or forfeiture of the Plaintiff's personal property. Plaintiff is under

no restriction that would prevent her from purchasing a new rifle or shotgun and she has also had

her pistol license returned by the NCPD. Lastly, since the voluntary surrender of her wrongfully retained longarms, Plaintiff has since purchased new longarms.

This unconstitutional policy is causing Nassau County residents to simply abandon their property to the Sheriff or suffer thousands of dollars in legal fees in an effort to recover their property.

**Statement of Facts**

On January 5, 2012, Hon. Edmund M. Dane, J.F.C., issued an order that all support payments made by Plaintiff Christine Panzella's ex-husband be made payable through the Support Collection Unit. At some point before June 21, 2012, Plaintiff's ex-husband was deemed to be in arrears of his child support payments by the Support Collection Unit. On June 21, 2012, Plaintiff sent a letter to the Support Collection Unit clarifying this issue. On June 22, 2012, Plaintiff's ex-husband, a former law enforcement officer, filed a petition and obtained an Ex Parte Temporary Order of Protection against the Plaintiff pursuant to Family Court Act § 842-a.

The June 22, 2012 Ex Parte Order states in relevant part:

> "It is a federal crime to:
>
> Buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect; and
>
> Buy, possess or transfer a handgun, rifle or shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262)."

Five days after the Ex Parte Temporary Order dated June 22, 2012 was granted, on or about June 27, 2012, Deputy Sheriffs, on behalf of Nassau County and the Nassau County Sheriff's Department, and under the supervision of Michael J. Sposato and Robert Mastropieri, appeared at the Plaintiff's home at 1:00 a.m. and served her with a copy of the Ex Parte

Temporary Order of Protection. This Ex Parte Temporary Order of Protection was to remain in effect through December 21, 2012.

At the time of service of the Ex Parte Temporary Order of Protection, the Deputy Sheriff's informed the Plaintiff that any rifles or shotguns that she possessed in the home would have to be surrendered. The Plaintiff complied and surrendered two shotguns and two rifles, one of which was the Plaintiff's antique MAS 45, 22-caliber rifle, a highly prized family heirloom. Plaintiff was provided with a "Property/Firearm Receipt" which listed the confiscated items, but did not contain any instructions regarding the procedure or timeframe in which the confiscated property would be returned to the Plaintiff. Plaintiff's confiscated property was brought to the Family Court Unit of the Sheriff's Department, where it was inventoried and then transferred to the armory in the Nassau County Correctional Center, where the confiscated property remains to this day. Prior to the expiration of the Ex Parte Temporary Order of Protection, which was set to expire on December 21, 2012, a Temporary Order of Protection was issued with an expiration date of January 22, 2013. On or about March 6, 2013, Plaintiff's ex-husband withdrew his petition for an order of protection and Family Court Judge Conrad D. Singer signed an Order of Dismissal on March 6, 2013.

Thereafter, the Plaintiff made several unsuccessful attempts to have her confiscated property returned to her. On July 24, 2013, Plaintiff made a formal, written request for the return of her rifles and shotguns on Defendant Nassau County, the Nassau County Sheriff's Department, Michael J. Sposato and Robert Mastropieri. This July 24, 2013 demand letter enclosed with it a copy of *Razzano*, which requires that Defendant Nassau County, through its agency the NCPD, promptly return all confiscated shotguns and rifles to their rightful owner

unless the County prevailed at a hearing and obtained a court order permitting the retention of the property.

On October 17, 2013, Plaintiff filed an Order to Show Cause For Preliminary Injunction and Restraining Order in the United States District Court for the Eastern District of New York (Hon. Sandra J. Feuerstein) ordering that pending a hearing, Defendants were temporarily restrained and enjoined from selling, destroying, transferring, or disposing any rifles or shotguns seized from the citizens of Nassau County to protect class members (*See* DE 6).[3] On November 1, 2013, Plaintiff made a motion for limited discovery related to the Class certification. (*See* DE 9).

Subsequently, meetings took place with Hon. Feuerstein on January 9, 2014, April 1, 2014, June 2, 2014, July 9, 2014, and September 10, 2014 to review the practice of returning firearms to the owners without the need for a court order forcing the Sheriff to take action. During the course of these meetings, on September 9, 2014, Plaintiff Christine Panzella's pistol license was returned to her. On December 4, 2014, Plaintiff filed a motion to certify the class, which this court held in abeyance pending all settlement discussions (*See* DE 64 & 71). Several meeting also took place in front of Your Honor on September 10, 2015, December 17, 2015 and January 14, 2016.

To avoid further litigation and in light of Almazon's statement that Mastropieri that "property will be returned without a court order after this case is concluded" the County's refusal to end the matter for the entire class is indefensible (DE 96). Nassau County was ordered to return the Plaintiff's improperly retained longarms without the need of a second court order, which would put Nassau County in conformance with the rest of New York State, and FCA §

---

[3] This Order, affecting all longarms in the possession of Defendants, is the only thing protecting gun owners from mass destruction of their property, as Nassau County destroys all firearms and longarms not returned within one year.

842-a(5) and Penal Law § 400.05(6), as well as the policy to return firearms to third parties without a court order.

**ARGUMENT**

**POINT I**

**DEFENDANT NASSAU COUNTY HAS INTRODUCED NO RELEVANT "CONTROLLING DECISIONS THAT THE COURT OVERLOOKED" THAT WOULD REASONABLY WARRANT THE GRANTING OF THE MOTION TO REARGUE**

Under Local Civil Rule 6.3, reconsideration is appropriate only if "the court overlooked matters or controlling decisions which, had they been considered, might reasonably have altered the result reached by the court." *United States v. U.S. Currency in the sum of Ninety Seven Thousand Two Hundred Fifty–Three Dollars,* No. 95 Civ. 3982 (JG), 1999 WL 84122, at *2 (E.D.N.Y. Feb. 11, 1999) (quoting *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.,* No. 86 Civ. 6447(JMC), 1989 WL 162315, at *4 (S.D.N.Y. Aug. 4, 1989) (internal quotation marks omitted)); *see also Shrader v. CSX Transp.,* 70 F.3d 255, 257 (2d Cir.1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *see also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan,* No. 97 Civ. 6612(SJ), 2006 WL 355137, at *1, 2006 U.S. Dist. LEXIS 7635, at *4 (E.D.N.Y. Feb. 15, 2006) ("The standard ... is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court."); *Davis v. The Gap,* 186 F.R.D. 322, 324 (S.D.N.Y.1999) (stating that "the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment"). The decision to grant "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial

resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614

(S.D.N.Y.2000) (internal quotation and citation omitted).

Before even addressing any of the substantive legal claims reiterated by the Defendant in

its memo, it is necessary to deal with the threshold issue of the standard of review in deciding if a

party is entitled to reargument. The Defendant itself even stated that a motion for reconsideration

is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a 'second bite at the apple,'" *Analytical Surveys, Inc.

v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d. Cir. 2012).

> **A.** **"Stigma-Plus Defamation Claims" Supporting Article 78 As a Due Process
> Remedy Have No Relation to The Matthews Test, The Facts of This Case or
> Cases Such as Canavan, Krimstock, Razzano and Others Where The Sheriff
> is Simply Ignoring Their Statutory Duty To Return Non Contraband
> Property**

The County offered no legal authority to support an Article 78 as a substitute the Family

Court Act return procedure under FCA § 842-a(5) and Penal Law § 400.05(6). (See Letter

Requesting Motion to Reargue dated September 4, 2015, DE 81). In this Memorandum of Law,

however, it offers three clearly distinguishable First Amendment cases. Except for these three

First Amendment cases discussed in Point III of its Memorandum of Law, the Defendant merely

recites the same arguments already presented to this court. No explanation is offered why no

court order is required for third party transfers under the FCA § 842-a(5) and Penal Law §

400.05(6), but only to return property to the owner.

In Point III of its Memorandum of Law, Defendant Nassau County introduces three cases

which it claims stand for the notion that "[an] Article 78 proceeding provides sufficient due

process" (*See* Defendant's Memorandum of Law, pg. 15). While all three of these cases do stand

for such a proposition, they are factually distinguishable from the circumstances of this case.

Each of the three cases cited by the Defendant relate to the availability of adequate due process in a "stigma-plus" claim or similar free speech violation.

In *Nawrocki v. New York State Office of Children and Family Services*, 66 F.Supp.2d 336 (W.D.N.Y. 2014), the plaintiff, a former employee of a state agency, brought an action against the New York State Office of Children and Family Services ("CFS") related to the termination of her employment. Although the plaintiff in *Nawrocki* asserting a due process claim, the plaintiff's due process claim "allege[d] the deprivation of a liberty interest under a so-called 'stigma-plus' theory." *Nawrocki* 66 F.Supp.2d at 339. The court in *Nawrocki* held that "the availability of a post-termination Article 78 proceeding will **defeat a stigma-plus claim**, regardless of whether the plaintiff actually filed an Article 78 petition." *Id*. The language of the *Nawrocki* actually decision ***limits the applicability of Article 78*** as a proper due process mechanism to the realm of "stigma-plus" cases. The present case deals strictly with the deprivation of a property interest and in no way resembles a "stigma-plus" case. While an Article 78 may be a proper remedy when dealing with a "stigma-plus" issue, such a holding as in *Nawrocki* in no way applies to the wrongful deprivation of an individual's private property interest.

Similarly, *Anemone v. Metropolitan Transp. Authority*, 629 F.3d 97 (U.S. Ct. of Appeals, 2d Circuit 2011) deals with the violation of an individual's free speech and due process rights. Like in *Nawrocki*, the court in *Anemone*, stated that:

> "In the context of an at-will government employee, a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests." *Anemone* 629 F.3d at 121.

In Anemone, the applicability of an Article 78 proceeding as an appropriate due process remedy is limited in application to cases dealing with the reputation and professional interests of an individual (i.e. "non-tangible assets). The present case deals strictly with Defendant Nassau

County's impermissible retention of longarms after the expiration or withdrawal of an order of protection. Defendant's attempt to establish a convenient connection between the present case and cases like *Nawrocki*, *Anemone*, and *Montalbano v. Port Authority of New York and New Jersey*, 843 F.Supp.2d 473 (E.D.N.Y. 2012), is tenuous at best. None of the three new cases raised by the Defendant are remotely similar to the facts and circumstances of the present case. Attempting to make a broad connection between the present case and "stigma-plus" cases like *Nawrocki* and *Anemone* is insufficient to warrant the granting of Defendant's motion for reargument.

By ignoring the controlling applicable property return cases, the Defendant, is unable to meet the high threshold that is required in order for a party to be granted a right to reargue. Nassau County fails to meet the threshold requirements for commencing a Rule 6.3 motion. Accordingly, a Rule 6.3 motion would be futile as a matter of law and would only continue to delay all class members from having their property returned.

## POINT II

**NASSAU COUNTY'S INTEREST IN ADHERING TO NEW YORK STATE LAW, AND IN NOT VIOLATING FAMILY COURT ORDERS, WHILE LEGITIMATE CONCERNS, DOES NOT OUTWEIGH THE FIRST TWO *MATHEWS* FACTORS**

Nassau County continues to try to confuse this court into believing that Panzella has an affirmative duty under Penal Law § 400.05(6), to request the return of her property first, or prevail at a hearing, when it is the County which has the duty to prove its likelihood of success in a forfeiture proceeding as justification for continued retention of non-contraband is justified.[4]

---

[4] The County begins its point III in its MOL by stating incorrectly; *"In relying on Razzano as authority for directing the Sheriff's Department to hold a post deprivation hearing… when in fact the duty is to return the property under Penal Law section 400.05(6)* "… "a person who surrenders firearms shall have the right to arrange for the sale, or transfer, of such firearm to a duly licensed dealer in accordance with this chapter, or for the transfer of such firearm to himself or herself.", or else to hold a prompt hearing to justify continued retention, where the burden is on the Sheriff to explain why it should not immediately

According to Nassau County, "under the current state of the law, absent a court order from a court of competent jurisdiction, the [Sheriff's] Department has no authority to return plaintiff's longarms to her, even if the Temporary Order of Protection has expired or been dismissed" (DE 74-55, pg. 2). No explanation is offered why no court order is required to dispose of firearms to third parties under FCA § 842-a(5) and Penal Law § 400.05(6).

The requirement of requesting the return of longarms, as opposed to following the FCA return procedure, misses numerous class members that would be protected through class certification, making class certification critical at this time. *See Thomas v. Omni Credit Servs., Inc.*, No. CV 12-6219 (JFB) (GRB) (E.D.N.Y., Mar. 13, 2013).

As the Supreme Court articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the three factors to be balanced when addressing a potential due process violation are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. In its Memorandum of Law, the Defendant concedes that the Plaintiff has a private property interest in her longarms, and that the continued retention of the longarms by the Sheriff's Department deprives the Plaintiff of her interest. Furthermore, the Defendant does not dispute the fact that the Plaintiff's longarms have continued to be retained long after the expiration of the temporary order of protection.

In the Order, the Court used a balancing of the three *Mathews* factors in conjunction with *Razzano* to determine that "although *Razzano* addressed factually distinct circumstances, the

---

return the property, and then for the Sheriff to commence a Supreme Court action in replevin to confirm the hearing.

Court finds *Razzano* persuasive and believes its broader logic should apply here… [D]efendants

have not articulated any basis for retaining plaintiff's longarms (*Panzella*, 2015 WL 5607750, at

*7). The Defendant claims on page 5 of its Memorandum of Law that not only was the

application of *Razzano* inapplicable to the circumstances of this case, but further that it is

contradicted by Second Circuit and subsequent District Court decisions.

According to Nassau County:

In New York, numerous trial and appellate courts have been presented with this precise
issue facing plaintiff: a respondent to a vacated Temporary Order of Protection seeking
an order from the Supreme Court, directing that the Nassau County Sheriff's Department
return her longarms. ***Not one of these courts has directed that the person's longarms be
returned*** (See DE 74-55, pg. 17) (emphasis added).

Contrary to the claims of the Defendant, Sposato and Mastropieri have been directed for

years to return property directly to the owner. In many cases both Sposato and Mastropieri were

admonished by the various courts. Some of these cases annexed to the original motion are as

follows:

1.  *Beil v. Sheriff's Department of Nassau County and Nassau County Police Department*,
Index No. 16152/00 (Sup. Ct. Nassau Co. January 2, 2001) (Copy of Decision DE 18-5, Ex.  B,
pgs. 35-36) (Article 78 dismissed as premature as Pistol License hearing not yet held).
2.  *Drayss v. Nassau County Sheriff's Department*, Index No. 12718/01 (Sup. Ct. Nassau Co.
September 25, 2001) (Copy of Decision, DE 18-5, Ex. B, pg. 37)
3.  *Scott E. Kessler v. Lyana Rodriquez*, O-00716-03. (Copy of Decision annexed as Exhibit
21, DE 74-34, pgs. 1-6) ("The temporary of Protection is vacated. That means they are holding
the weapons without any lawful authority.")("The only reason I amended the order today was as
a courtesy to you to make sure the Sheriff knows that order was vacated. This order doesn't
exist. They have no right to hold on to your weapons.")("I am not writing any further order. If
the Sheriff is unlawfully holding your weapons that is for you and your lawyer to deal with not
this court.")("When I vacated the order, that means to vacate of the weapons and the weapons
taken from you is ripped up. Your weapons are yours, except somebody is holding them
unlawfully. That is the Nassau County Sheriff.").
4.  *Soloman v. Suozzi et al.*, Index No 10253/03 (Exhibit 24, DE 74-37, pgs. 1-2)("Moreover,
since it has been adequately established that the Family Court Order of Protection has been
vacated, the burden of proving entitlement to retain the surrendered property rests upon
Respondent.").

5.     *Hoerlein v. Nassau County Sheriff*, Index No. 11935/03 (Sup. Ct., Nassau Co. Sept 25, 2003) (Davis, J.S.C) (Copy of Hoerlein DE 18-5, Ex. B, pgs. 40-41) ("Horelien I") (**After order is vacated, burden is on the Sheriff's Department to justify retention.**)(*See also Horelien v. Nassau County Sheriff*, Index No. 11935/03 (Sup. Ct. Nassau Co. December 23, 2003) (Copy of Decision DE 18-5, Ex. B, pgs. 42-43) ("Horelien II") (Court approved recommendation that the firearms be returned upon a clear background check by the Sheriffs).

6.     *Pignetti v. County of Nassau*, Index No. 5675/04 (Sup. Ct. Nassau Co.) (Plaintiff sought restraining order preventing County from destroying or disposing of firearms).

7.     *Aloi v Nassau County Sheriff's Dept.*, 9 Misc.3d 1050 (Sup. Ct. Nassau April 1, 2005) (DE 18-5, Ex. B, pgs. 38-39, 43- 56) (Directive that application for return of longarms should be made to the Sheriff's Department.)

8.     *Engel v. Nassau County Sheriff's Department*, 24 A.D.3d 548, 549, 807 N.Y.S.2d at 384 (2d Dept. 2003)

9.     *Lomonico v. Lomonico*, O-08871-07(DE 18-5, Ex. C, pg. 59 *et seq.*) (Once the Temporary Order is vacated it no longer exists. The longarms are being held without authority.) Hon. John G. Marks of the Nassau County Family Court stated:

*"Even in those cases where I could sign an order directing the removal of the weapons, once my order is vacated, as far as I'm concerned, the weapons should be returned…I don't know what power they have, because once the order is vacated, it's out…somebody should bring a class action suit for failing to return property. I've said that for years and think some attorneys should take it up…We had discussions, there's a written policy. As a matter of fact I know a judge that sanctioned the Sheriff's Department for not producing the papers they said they had."*

(DE18-5, Ex. C, pg.5, line 21 to pg. 6, line 13).

10.     *Bahntge v. Nassau County Sheriff's Department*, Index No. 5642/07 (Sup. Ct. Nassau Co. July 31, 2007) (Copy of Decision, DE 18-5, Ex. B, pgs. 52-56) (Sheriff's Department had no objection to Court issuing an order to return firearms).

11.     *Mathie v. Nassau County Sheriff's Department*, Index No. 18482/07 (Sup. Ct. Nassau Co. December 5, 2007) (Feinman, J.S.C) (DE 18-5, Ex. B, pg.57) (Sheriff Sposato provides background check and affidavit of no opposition).

12.     *Mammolitti v Nassau County Sheriff's Department*, Index No. 012084/2011 (Sup. Ct. Nassau Co.  December 7, 2011) (Brandveen, J.S.C.).

In *Aloi v. Nassau County Sheriff's Department* (Index No.: 2000/03), Hon. Zelda Jonas

denied the Petitioner's application pursuant to CPLR Article 78 for an order directing the release

of certain firearms seized by the Nassau County Sheriff's Department pursuant to an Order of

Protection issued by the Family Court. According to Hon. Jonas, "The Family Court is better

capable of deciding this issue since the history and appropriate records of alleged violence in this

matter is in the custody of that court."

Ordinarily under the *Mathews* test, a state actor must provide pre-deprivation process, unless there exists "exigent circumstances necessitating prompt action" (See *Razzano* 765 F.Supp.2d at 186). In this case, as in *Razzano*, the issue before the Court was the complete and utter lack of an adequate post-deprivation remedy. To the extent that a person whose longarms are seized can readily purchase and possess new longarms, "Nassau County can only have a limited public safety interest in retaining that person's confiscated firearms" (*Id.* at 189). If no protective order (or any other order) is issued that would prevent an individual from purchasing or possessing new longarms, "the state's public safety interest in keeping [an individual's] old longarms [is] limited" (*Id.*) Nassau County must bring a Supreme Court action seeking a protective order or a forfeiture proceeding after the expiration of a valid order removing firearms under FCA § 842 a(5)(a)-(c) to keep a person's longarms.

The burden in clearly on the party seeking to retain property, in this case, the County and not the owner. Thus, any post-deprivation must be the exception to a general rule of return to qualified owners, and not third parties. Thus, if required in rare cases, "such a hearing [which] would provide the owner of confiscated longarms a timely and inexpensive forum to challenge the government's ***continued holding of his property***" (*Id.* at 190). Next, by requiring Nassau County to initiate a legal action after retention was found to be justified, to maintain possession of seized longarms, "the burden of proving the state's right to hold a private person's property is appropriately placed on the government" (*Id.*). The legal action Nassau County would initiate to continue possession of the longarms would "presumably be for forfeiture, or for a protective order barring the owner from possessing longarms" (*Id.*). Such a procedural safeguard would "provide significant additional protection without incurring unreasonable cost" (*Id.*).

## NO "LEGISLATIVE GLITCH" EXISTS SUCH THAT THE FAMILY COURT HAS NO JURISDICTION TO DIRECT THE SHERIFF TO RETURN SEIZED LONGARMS

According to the County, the Sheriff is continuing to follow the advice of the Nassau County attorney in keeping firearms unless ordered to return them, even after *Canavan*, *Krimstock* and *Razzano*. It is simply not rational to have the NCPD returning handguns without a court order, under Penal Law Section 400.05(6) but the Sheriff not returning longarms ***to the owner***, under the same Penal Law Section. Plaintiff Christine Panzella is "legally permitted to own/possess such longarms," which was the standard offered by Mr. Golio in response to the court ordered second written demand for the return of the property to Ms. Panzella (*See* DE 74-26 and DE 74-27, Exhibits 14-1 and 14-2 of Plaintiff's Motion for Summary Judgment). In the present case, Defendant Nassau County does not dispute the fact that the Plaintiff is "legally permitted" to own or possess firearms under this standard. As such, the Defendant may not rely upon such arbitrary legal advice, especially given the years of court directives.

Further, Your Honor's Order made clear that any perceived "legislative glitch" that may exist in the Family Court Act § 842-a is not relevant here (*Panzella*, 2015 WL 5607750, at *7).

According to the Defendant:

Since the late 1990's, as the Sheriff's Department has been advised by legal counsel that under the current state of the law and due to a legislative "glitch" in Family Court Act § 842-a as described in the case *Aloi v. Aloi*, 10 A.D.3d 655, 781 N.Y.S.2d 613 (2d Dept. 2002), it is now, and has been throughout, the Sheriff's Department's understanding that it has no legal authority to return longarms confiscated from a respondent pursuant to § 842-a, without being served with a further court order issued by a court of competent jurisdiction directing their return. Golio Aff., ¶6 (See DE 74-55, pgs. 4-5).

Nassau County offers no authority as to why it alone does not follow the statutory return policy of Family Court Act § 842-a(5)(b) which states, "The disposition of any such firearms shall be in accordance with the provisions of subdivision six of § 400.05 of the Penal Law."

Upon the expiration or dismissal of a Family Court order, the property must be disposed without the need for a second court order. If continued retention of the property is sought by the Nassau County Sheriff, the burden is on the County to justification for such extended retention. In this case, Plaintiff Christine Panzella is clearly eligible for the return of her property. She has reobtained her Nassau County Pistol License and has subsequently purchased a new rifle. As such, her pistol should have been permissibly transferred directly back to her, had they not already been destroyed by the NCPD. As for longarms, there is no license required, and a transfer of such longarms can be legally made even without the return of any previously revoked license (*See* Penal Law § 400.05(6)). Defendant Nassau County's continued retention of the Plaintiff's property is a direct disregard of the return policy of FCA § 842-a(5)(b), which is followed by the rest of New York State. In sum, the Family Court Act provides that where a suspension order has been issued by the Family Court, and the order is no longer in effect, the property must be returned in compliance with this general presumption (*See* FCA § 842-a(4)). To date, Nassau County has continued to ignore this well-settled policy, which is followed throughout the rest of New York State. Such disregard for this well-settled return procedure has caused significant harm to Plaintiff Christine Panzella and many others similarly situated.

Furthermore, in this case, as in *Razzano*, "there are virtually no disputed facts with respect to this cause of action" (*See Razzano v. County of Nassau*, 765 F.Supp.2d 176 (E.D.N.Y. 2011)). Under the FCA § 842 a(5)(a)-(c), a Family Court act requiring the prompt surrender of one of more firearms shall be considered a voluntary surrender for purposes of subparagraph (f)

21

of paragraph one of subdivision (a) of Section 265.20 of the NY Penal Law. Specifically, under NY Penal Law § 400.05(6), "a person who surrenders firearms shall have the right to arrange for the sale, or transfer, of such firearm to a duly licensed dealer in accordance with this chapter, or for the transfer of such firearm to himself or herself." It is well-settled and acknowledged by this Court that no license is required in Nassau County or elsewhere in New York State to purchase or own longarms.

In *Panzella*, as in *Razzano*, Nassau County and the Sheriff's Department have admitted to a policy of confiscating longarms[5], even in such cases where no Family Court judge issued an order to remove firearms under a temporary order of protection pursuant to FCA § 842 a(5)(a)-(c). In this case, Defendant Nassau County does not dispute the fact that Plaintiff's guns were taken under this policy. In both this case and in *Razzano*, the broader logic of which this Court said should apply here, both parties agree that the Plaintiff demanded the return of her guns, and was informed by the NCPD that her longarms would be returned if she "either (1) has her pistol license reinstated, or (2) presented a court order directing their return" (See *Razzano* 765 F.Supp.2d at 185). As has been stated several times throughout this case, it is undisputed that Plaintiff Christine Panzella, much like the plaintiff in *Razzano*, had her pistol license reinstated.[6]

Recently, Judge Chen held in *Dudek v. Nassau County*, 12-cv-1193, "the lifting of the Family Court Order left the officers free to return the longarms (*See Dudek v. Nassau County*, 12-cv-1193 (PKC) [DE 45] pg. 19, which also sustained the 42 USC § 1983 claims against Nassau County and the Nassau County Sheriff). Ironically, after arguing for over a decade that a

---

[5] "The Nassau County Police Department has a policy of confiscating longarms from their owner in any incident that involves the threat of violence, threat to the public, in exigent circumstances, where there is the imminent threat of a use of weapons, in cases involving harassment, intimidation, threats and physical violence…" (*See Razzano* 765 F.Supp.2d at 186).

[6] This fact is also true for some other similarly situated members of Plaintiff Christine Panzella's class.

separate State Supreme Court order is required to order the County to return firearms in Nassau County, the County now argues that Your Honor's Order dated August 26, 2015 [DE 79] is legally insufficient to either return property or conduct a prompt post-deprivation hearing to justify continued retention. The only logical conclusion that was be drawn from this is that Nassau County should simply return the property under FCA § 842-a(4), as required.

Nassau County has demonstrated recalcitrance in returning property in non-firearms cases as well. For example, the New York Court of Appeals noted in *County of Nassau v. Canavan*, 1 N.Y.3d 134, 144, that even if continued retention of an individual's car is a rational means of protection of the public from drunk drivers, retention "does little to prevent the person from driving another car drunk." So too in *Ferrari v. County of Suffolk*, 790 F.Supp.2d 34, 40 (E.D.N.Y. 2011), the Eastern District discussed the *Canavan* requirement that the municipality "establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the foreclosure action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding," regardless of attendant public safety risks.

The *Canavan/Krimstock* hearing requires the municipality to prove, by a preponderance of the evidence all three of these elements, or the municipality must release the property. Just like in *Razzano*, the likelihood that the government will succeed is negligible as the NCPD have already determined that Plaintiff Christine Panzella (like the Plaintiff in *Dudek*) is eligible for the return of her personally owned longarms.

## CONCLUSION

The Sheriff admits to disposing of longarms without a court order to third parties.

Accordingly, the Sheriff should recognize its obligations extend to the property owner as well.

For all of the foregoing reasons, Plaintiff Christine Panzella respectfully requests that the Court

deny Defendant Nassau County's motion for reconsideration pursuant to Local Civil Rule 6.3.

Dated: Garden City, New York
      March 11, 2016

                                      La Reddola, Lester & Associates, LLP

                                      /s/ Robert J. La Reddola
                                      By: Robert J. La Reddola, Esq.
                                      *Attorneys for Plaintiff*
                                      600 Old Country Road – Suite 224
                                      Garden City, New York 11530
                                      (516) 745-1951