UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X   For Online Publication Only
CHRISTINE PANZELLA,

      Plaintiff,

   v.          **MEMORANDUM AND ORDER**
               13–CV–5640 (JMA)(SIL)
COUNTY OF NASSAU; NASSAU COUNTY
SHERIFF'S DEPARTMENT; MICHAEL J.
SPOSATO, individually and in his official
capacity; ROBERT MASTROPIERI, individually
and in his official capacity; UNKNOWN SHERIFF
#1, with Shield #116; and UNKNOWN SHERIFFS
#2 through 4.

      Defendants.
----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

  Before the Court is defendants' County of Nassau (the "County"), Nassau County Sheriff's Department (the "Sheriff's Department"), Nassau County Sheriff Michael J. Sposato, and Nassau County Deputy Sheriff Robert Mastropieri (collectively, "defendants") Motion for Reconsideration of this Court's August 26, 2015 Memorandum and Order, granting in part and denying in part the parties' cross-motion for summary judgment (the "August 26 Order").

  For the reasons set forth below, the Court denies defendants' motion and declines to reconsider its August 26 Order.

## I.  BACKGROUND

  The Court assumes familiarity with the facts as set forth more fully in the August 26 Order, Panzella v. County of Nassau, No. 13–CV–5640, 2015 WL 5607750, at *7 (E.D.N.Y. Aug. 26, 2015) (ECF No. 79), and provides a summary of only the pertinent facts.

  On June 22, 2012, plaintiff's ex-husband filed a petition for an order of protection against

1

plaintiff.  (Pl.'s 56.1 ¶ 1, ECF No. 74.1; Aff. of Christine Panzella ("Panzella Aff.") ¶ 3, ECF No. 74-3.)  That same day, a Court Attorney Referee in Family Court issued an ex parte order of protection ("Order of Protection") against plaintiff, requiring her to:

> Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats or any criminal offense against [her ex-husband] . . . .

(Panzella Aff., Ex. 1-2.)  The Order of Protection also stated that it would remain in effect until December 21, 2012.  (Id.)

Beneath the signature line of the Court Attorney Referee, the Order of Protection contains the federal warning language explaining that:

> It is a federal crime to . . . buy, possess or transfer a handgun, rifle, shotgun or other firearm while this Order remains in effect . . . (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).[1]

(Id.)  The Family Court directed "Police Service" of the Order of Protection on plaintiff.  (Id.)

Five days later, four deputy sheriffs from the Nassau County Sheriff's Department served the Order of Protection on plaintiff.  (Defs.' Counter 56.1 ¶ 4, ECF No. 75; Pl.'s 56.1 ¶ 2.)  After learning that plaintiff had firearms and longarms in her home, the deputy sheriffs confiscated, among other things, two rifles and three shotguns.  (Defs.' Counter 56.1 ¶ 4; Panzella Aff. ¶ 17.)  One of the deputy sheriffs gave plaintiff a "Property/Firearm Receipt" listing the confiscated items.  That receipt, however, does not contain any instructions as to when or how those items might be

---

[1] Whether the federal warning language applied to the plaintiff at the time the Sheriff's Department seized her longarms is questionable since the Order of Protection was obtained ex parte.  See 18 U.S.C. § 922(g)(8)(A) (criminalizing possession of longarms when, inter alia, an individual is subject to an order of protection that "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate").

returned to plaintiff.  (Ex. 4, Panzella Aff., ECF No. 74-11.)

The two rifles and two shotguns belonging to plaintiff ("plaintiff's longarms") were brought to the Family Court Unit of the Sheriff's Department, inventoried, and transferred to the armory in the Nassau County Correctional Center.  (Defs.' 56.1 ¶ 4.)  Plaintiff's longarms remain at that facility.  (Id.)

On November 27, 2012, after a hearing at which plaintiff appeared, the Family Court extended the Order of Protection to January 22, 2013 (the "Extension Order").  (Pl.'s Counter 56.1 ¶ 24, ECF No. 75-6; Panzella Aff. ¶ 18.)  The Family Court advised plaintiff of the issuance and contents of the Extension Order, and served a copy of the Extension Order on plaintiff in court. (Panzella Aff., Ex. 5, ECF No. 74-12.)

On or around March 6, 2013, plaintiff's ex-husband withdrew his petition for an order of protection, resulting in the dismissal of the order of protection proceeding.  (Pl.'s 56.1 ¶ 5; Panzella Aff., Ex. 1-3, ECF No. 74-7.)  On several occasions following the dismissal of her ex-husband's petition, plaintiff requested the return of her longarms.  Defendants, apparently acting on long-standing advice of counsel, have refused to return plaintiff's longarms "unless and until the Sheriff's Department is served with a court order directing the return."  (Aff. of Michael R. Golio ¶¶ 6, 16, ECF No. 74-54.)

The parties each filed a motion for summary judgment.  In the August 26 Order, the Court ruled that the County must hold a due process hearing consistent with the criteria set forth in Razzano.  Panzella, 2015 WL 5607750, at *12.  The injunctive relief was stayed pending the resolution of the instant motion for reconsideration.  (ECF No. 85.)

## II.     STANDARD OF REVIEW

The standard for granting a motion for reconsideration is strict, and "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 628 F. App'x 793, 796 (2d Cir. 2015) (quoting Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995)); Bank of America, N.A. v. AIG Fin. Prods. Corp., 509 F. App'x 24, 27 (2d Cir. 2013) ("The standard for granting such a motion is strict . . . ." (quoting Shrader, 70 F.3d at 257)); see also Local Civ. R. 6.3 ("[The moving party must] set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.").

It is "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014). In order to prevail on a motion for reconsideration, the moving party must demonstrate that the Court overlooked controlling decisions or factual matters before the Court on the underlying motion. See Stoner v. Young Concert Artists, Inc., No. 11–CV–7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources."); Henderson v. City of New York, No. 05–CV–

4

2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been 'overlooked,' the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.").

### III.    DISCUSSION

In seeking reconsideration, defendants argue that the Court's decision granting plaintiff partial summary judgment was incorrect for three reasons:  (1) Under the test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), the County's interest in adhering to New York State law and not violating Family Court orders outweighs the other factors; (2) a case upon which the Court relied, Razzano v. County of Nassau, 765 F. Supp. 2d 176 (E.D.N.Y. 2011), is unpersuasive and should not apply to this case; and (3) Second Circuit case law holds that an Article 78 proceeding provides sufficient post-deprivation due process.  The Court will address each argument in turn.

**A.  The County's Interests Under the Mathews Test**

Defendants argue that the Court "overlooked controlling decisions and facts which should alter the Court's conclusion" because under the Mathews test, the County's interest in adhering to New York State law and not violating Family Court orders outweighs the other Mathews factors.  (Defs. Mem. at 5–6.)  Defendants contend that the County's interest here is "in adhering to well-established New York law that the Sheriff's Department, in confiscating firearms from respondents in orders of protection, merely serves as the civil enforcement officer of the Family Court, and that to return plaintiff's longarms without further court order would exceed and violate the Family Court's directives."  (Id. at 6.)

More precisely, however, defendants merely rehash their argument from summary judgment that the Family Court directed the Sheriff's Department to confiscate plaintiff's

5

longarms, and therefore the Sheriff's Department cannot return plaintiff's longarms without an express order from a court of competent jurisdiction. (Id. at 7.) Defendants argue that "[t]here is no question that while the Family Court has jurisdiction to direct the Sheriff to confiscate firearms from the respondent in an Order of Protection, . . . it has no jurisdiction to direct the Sheriff to return the seized longarms." (Id. at 7.) Defendants fully argued this point regarding the Family Court Act's "legislative glitch" on summary judgment.

Defendants contend that the Court's "focus on minor technicalities is to ignore the intent and spirit of the Family Court Act and specifically § 842-a, which is to prevent domestic violence by authorizing the Sheriff's Department to confiscate dangerous weapons from respondents in a Family Court proceeding, in which an order of protection has been issued." (Id. at 8.) Moreover, defendants argue that after the Sheriff's Department learned that plaintiff had multiple firearms in the house, "it would have been the utmost dereliction of duty for the deputy sheriffs to simply depart, leaving plaintiff with her longarms in the face of the Family Court order clearly containing the federal warning language." (Id. at 8–9.)

Defendants have not identified any facts or controlling law that the Court overlooked in its determination that a post-deprivation hearing is required under Mathews. In the August 26 Order, the Court specifically and thoroughly considered whether the Sheriff's Department seized the weapons pursuant to the Family Court Act § 842–a. The Court found that as directed to plaintiff, "the Family Court's orders did not include the explicit surrender provision found in the Temporary Order of Protection Form or otherwise invoke § 842–a." Panzella, 2015 WL 5607750, at *7. The Court did not overlook controlling law in determining that plaintiff's longarms were not seized pursuant to Section 842–a of the Family Court Act. Therefore, the Court will not reconsider defendants' argument that under the Mathews test, the government's interest in adhering to New

6

York State law and not violating Family Court orders outweighs the other factors.

## B. The Impact of Razzano on this Case

Defendants argue that the Court "overlooked controlling case law and statutory law" in finding Razzano v. County of Nassau, 765 F. Supp. 2d 176 (E.D.N.Y. 2011), persuasive and applying its broader logic to this case. (Defs. Mem. at 11.) Defendants point to two allegedly key distinctions between Razzano and this case. First, defendants argue that in contrast to Razzano, in this case, the Sheriff's Department made no independent assessment of the danger plaintiff presented to her ex-husband. Whereas in Razzano the police department assessed the danger presented by not seizing the firearms, here, defendants contend that the Sheriff's Department was merely enforcing the language of two orders from the Family Court. As the Court has already addressed, in this Order and the August 26 Order, the longarms were not seized pursuant to Section 842–a of the Family Court Act.

Second, defendants assert that while the police department has authority over the issuance and revocation of handguns under New York Penal Law § 400.00 and can conduct hearings, the Sheriff's Department "has absolutely no authority under any statute, regulation or local law to conduct a hearing." (Id. at 11.) Therefore, defendants argue, the Sheriff's Department is unable to conduct a hearing that would comport with procedural or substantive due process, as directed by this Court's August 26 Order. However, defendants have not identified any controlling case law or statutory law that the Court overlooked on this point. In the August 26 Order, the Court explained that "[a]lthough defendants indirectly suggest that they are not competent to determine whether to return one's firearms, the Court notes that the County's police department makes these very determinations in connection with Razzano hearings and pistol licensing decisions." Id. at *7 n.13. Thus, the Court did not overlook controlling law in determining that Razzano and its

7

broader logic applies to this case.

**C. Article 78 Proceedings and Post-Deprivation Due Process**

Defendants argue that the Court "overlooked controlling Second Circuit case law that contradicts Razzano" and holds that an Article 78 proceeding provides sufficient post-deprivation due process. (Defs. Mem. at 15.) Defendants cite Anemone v. Metropolitan Transportation Authority for the proposition that "[a]n Article 78 proceeding provides the requisite due process – even if [the plaintiff] failed to pursue it." 629 F.3d 97, 121 (2d Cir. 2011). Defendants argue that district courts have relied on Anemone in denying claims of due process violations for the deprivation of a property interest, concluding that Article 78 proceedings provide sufficient due process. (Id.) Defendants contend that plaintiff therefore had adequate due process protections available to her in the form of an Article 78 proceeding, but failed to avail herself of that opportunity. (Id.) In response, plaintiff argues that these decisions "are factually distinguishable from the circumstances of this case," because they concern due process in "stigma-plus" or free speech cases. (Pl. Mem at 13–14.)

Here, defendants raise this argument for the first time. On summary judgment defendants argued that a plaintiff may bring an Article 78 proceeding in state court as an administrative remedy for the return of a seized longarm. (See Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summary Judgment at 11, ECF No. 75-1.) However, defendants did not argue that Razzano was wrongly decided or that an Article 78 proceeding provides sufficient due process protections in light of Razzano; nor did they cite to Anemone. Because defendants never cited to Anemone or advanced this argument in their motion for summary judgment, they have failed to point to any controlling Second Circuit case law that the Court overlooked that would warrant reconsideration. Polsby v. St. Martin's Press, Inc., No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)

8

(holding that on a motion for reconsideration, "a party may not advance new facts, issues or arguments not previously presented to the Court.").

Even if reconsideration were warranted, defendants' argument is unconvincing on the merits because Anemone is factually distinguishable from this case. Anemone dealt with the requisite post-deprivation process in the case of "stigma-plus" due process claims, specifically, at-will government employment. See Anemone, 629 F.3d at 121. There, the court explained that "in the context of an at-will government employee, a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests." Id. In Razzano, the court addressed post-deprivation process in the context of returning longarms confiscated pursuant to a policy of seizing weapons when the police believed a person to be dangerous. Razzano, 765 F. Supp. 2d at 181. In Razzano, the court concluded that due process required a prompt post-deprivation hearing and that an Article 78 proceeding was insufficient to provide the requisite due process protections for the confiscated longarms. Id. (noting that an Article 78 proceeding posed "a considerable risk of erroneous deprivation"). Thus, the holding in Razzano, in which the property interest was a longarm, does not run counter to Anemone, in which the property interest was at-will government employment. Moreover, in her motion for summary judgment, plaintiff cited to Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002), a case dealing with post-deprivation due process in the context of police seizure of property. Krimstock is far more apposite to the facts of this case than those cases cited by defendants in their motion for reconsideration.

Therefore, the Court did not overlook controlling Second Circuit case law in determining that an Article 78 proceeding does not provide adequate due process protections.

## IV. CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for reconsideration. The stay on injunctive relief is continued pending defendants' appeal.

 SO ORDERED.

Dated: June 8, 2016
Central Islip, New York

>                    /s/     JMA
> JOAN M. AZRACK
> UNITED STATES DISTRICT JUDGE